### JEFF CAMERON *v.* V. BEATTY, ET AL.

[Abstract Kentucky Law Reporter, Vol. 6—589, 594.]

**Adverse Possession.**

> An entry by a junior patentee into the boundary and possession of the elder patent amounts to possession only to the extent of his enclosure.

**Statute of Limitations.**

> The statute of limitations runs against the state the same as against a natural person.

**Riparian Rights.**

> The mere fact that the surveyor of land adjoining the Ohio river called for natural objects on the river bank, in running the line up and down the river, is no evidence that the line is the boundary line. It constitutes a mere meander line and the title of the owner of such land extends to the low water mark.

APPEAL FROM JEFFERSON COURT OF COMMON PLEAS.

February 5, 1885.

OPINION BY JUDGE PRYOR:

In tracing the title of the appellees to the land in controversy it is unnecessary to go farther back than the conveyance made by Peyton Short to Joshua Fry in April, 1802. That conveyance covers the land sought to be recovered by the appellees. Joshua Fry on the 9th of January, 1816, conveyed one thousand acres of the land conveyed to him by Short to one David Bell.

David Bell died in January, 1847, or wrote his will in that month

and it was probated in May, 1852, by which the absolute fee passed to his wife, Martha.

His wife died intestate and this land descending from her to the children, a partition of the land was made between them by deeds dated December 1, 1863. Two hundred eighty-six and three-fourths acres of this 1,000 acres was allotted in the division to Mildred Ann Beatty, a daughter of Martha Bell. This daughter died, having had issue by her marriage with Beatty, and her husband, who is the appellee on this appeal, became tenant by the curtesy. Having a life estate in the land the husband in 1868 leased it to John Remis and continued his lease from year to year. This tenant was in the possession when the claim of the appellants was asserted and is united with the life tenant as a plaintiff in the action.

In 1880 the appellant, Jones, believing that the boundary of the land claimed by the appellee extended to the margin of the river bank only, obtained a patent from the state covering the land between the high bank and low water mark. He is asserting claim by reason of the patent and by reason of the possession of one Cameron, both of them being appellants here and parties to the record.

Cameron's possession is unavailing as a defense for several reasons. In the first place the testimony of Cameron shows that his entry on this land was under title of these appellees or those from whom they claim. He went upon the land as a wood-chopper in the employ of a party who had purchased the wood of David Bell, who was the grantee of Short, and while so engaged he erected his cabin either on the Short tract or that sold by Short to David Bell, and if erected on either he can not now maintain that they had no title. It is certain that David Bell entered his title from Short, and it is equally manifest that this title or boundary was to low water mark whatever construction may be given to the boundary of the original patent. Cameron, if he made any entry after the wood chopping ceased or built out of his boat a cabin on the land, was a mere squatter without any other claim. He had no defined boundary. He set up no such hostile claim as even appraised the appellees of the intrusion until the patent to Jones was issued in 1880. He left the premises for three or four years at a time, breaking the chain of his possession and in fact had no other possession than those following his occupation (fisherman) who land their boats

and use the shore by the acquiescence of those owning the land bordering on the river. His possession gave no title, and if even considered as continuing for a period of fifteen years and hos-. tile to the plaintiffs, that possession would be confined only to the ground covered by his cabin as he had no other enclosure. It is well settled in this state that an entry by the junior patentee into the boundary and possession of the elder patent, the former only acquired possession to the extent of his enclosure. *Taylor v. Cox,* 2 B. Mon. (Ky.) 429; *Harrison v. McDaniel,* 2 Dana (Ky.) 348.

David Bell entered under a deed from Short in 1816. That deed embraced the land in dispute. Bell and his heirs and vendees have been in possession since that date. Now an entry made under a definite boundary evidenced by a paper title whether traceable to the Commonwealth or not gave to the parties entering possession to the extent of their boundary there being no other claimant in possession. An intruder or trespasser entering within such a boundary with the purpose of asserting a claim of right, having no other title than a mere possession can hold only to the extent of his enclosure. Or if Cameron had any hostile claim by possession it only extended to his enclosure. But the facts indicate clearly that he had no hostile claim such as would defeat the better title by reason of an adverse possession. The claim of the appellants if it can be maintained must be by reason of the patent from the state issued in the year 1880.

If the position assumed is correct, that is, that these parties have been in the possession of this land in dispute under a claim of title evidenced by the deed from Short to Bell and from Bell down to the present appellee then we perceive no reason why that possession had not ripened into a perfect title prior to the patent of 1880.

It is a mistaken assumption to say that "the statute of limitations prescribed in this chapter shall apply to actions brought in the name of the Commonwealth in the same manner as to action by private persons except where a different time is prescribed by some other chapter in this revision."

This action is not defended by the state nor has the state any interest in the controversy but its patent issued to the appellant after the lapse of more than sixty years from the entry of the appellee and those under whom he claims, and the lapse of one hundred and five years from the issuing of the patent from which they attempt to

show title, it seems to us there would be but little difficulty in applying the statute to any hostile claimant.

We are satisfied that the patent to Ross and May, dated in 1774, covers the land in dispute. The tract in this patent is bounded as follows: "A tract of land containing 3,000 acres by survey bearing date of the 2nd day of June, 1774, lying and being in the *County of Kentucky* on the Ohio River, beginning at a double horny locust, buckeye and dogwood on the south bank of the river 590 poles below Connelly's lower corner and about 20 poles above a small branch and five miles below the falls, and runneth thence leaving the river S. 86 E. 670 poles to two white oaks and elm, corner to Monroe Berger and John Wave's lands, S. 30 E. 520 poles to a poplar and beech between two meadows; thence leaving said line, S. 45 W. 400 poles to a beech and poplar; thence N. 64 W. 980 poles to a lynn, sweet gum and two sugar trees on the river bank and up the several courses thereof and binding thereon 390 poles to the beginning."

When it is evident that this land is located on the Ohio River the mere fact that the surveyor called for natural objects on the river bank in running the line up and down the river is no evidence specifying these natural objects the draftsman recites "and up the several courses thereof and binding thereon" he evidently means the river and not the bank where the land marks may be found. They are intended to identify the land lying on the Ohio river. It is along the bank having certain natural objects upon it. This is evidenced also by the plat which shows the river as at the extreme boundary of the patent. Regardless, however, of the plat the patent itself we think determines the question, and while there is a missing link in the chain of title from the patentee down to Short who conveyed to Fry in 1802, the parties entered and claimed title under that patent and it was competent to show boundary and also to show that the patent to Jones was void, the land having already been patented to Ross and May. We can not well see how either Cameron or Jones could be affected by any instruction given as they were without title or possession, and the entry of Fry under Short in 1802, and if not, the entry of Bell under Fry in 1816 is clearly shown, and they continued in possession and to claim the land since that date.

The objection to the petition that it presents no cause of action is not well taken. It was not necessary for the plaintiff to allege the character of his title. That he was the owner and entitled to the

possession is sufficient. He alleges that Mildred Ann was his·wife; that she died leaving issue, etc. This made him tenant by the curtesy and his failure to state that the issue was by him does not invalidate the pleading. It would be technical to so hold. Nor did the court err in excluding the testimony of the neighbors as to the location of the boundary by general repute. We see no error to appellant's prejudice and the judgment is *affirmed*.

*J. R. M. Polk, for appellants.*

*J. F. Bullitt, Jr., J. F. Bullitt, Sr., E. W. C. Humphrey, for appellees.*